UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARLON B. THOMPSON,

       Plaintiff,

vs.                                         Case No.  3:12-cv-1121-J-MCR

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

       Defendant.

_____/

**MEMORANDUM OPINION AND ORDER**[1]

    This cause is before the Court on Plaintiff's appeal of an administrative decision

denying his application for Social Security benefits.  The Court has reviewed the record,

the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's

decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this

opinion.

## I.    PROCEDURAL HISTORY

    Plaintiff filed an application for Supplemental Security Income ("SSI") on July 14,

2009 (Tr. 55), with an alleged onset date of July 15, 1996.  (Tr. 118-20).  The Social

Security Administration ("SSA") denied Plaintiff's claim initially and upon

reconsideration.  (Tr. 57-59, 64-66).  Plaintiff requested a hearing before an

Administrative Law Judge (the "ALJ") on June 3, 2010.  (Tr. 69-71).  The hearing took

place on March 14, 2011, in Jacksonville, Florida.  (Tr. 83).  At the administrative

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge.  (Doc. 12).

hearing, Plaintiff amended his alleged onset of disability date to August 24, 2009.  (Tr. 229).  The ALJ issued an unfavorable decision on March 28, 2011.  (Tr. 9-26).  The Appeals Council denied Plaintiff's request for review on August 29, 2012.  (Tr. 1-6). Plaintiff now seeks judicial review of the ALJ's final decision under 42 U.S.C. § 405(g).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since August 24, 2009 due to severe mental health problems, specifically social anxiety, as well as problems with hypertension and neck pain.  (Tr. 229-231).

### B.     Summary of Applicable Evidence Before the ALJ

Plaintiff was 50 years of age at the time the ALJ conducted the March 14, 2011 administrative hearing.  (Tr. 32).  At the hearing, Plaintiff stated he had a high school degree and past relevant work experience as a front-end loader.  (Tr. 32-33, 39-40). Plaintiff claims to be disabled since August 24, 2009 due to severe mental health problems, specifically social anxiety, as well as problems with hypertension and neck pain.  (Tr. 229-231).  As this appeal deals exclusively with Plaintiff's mental impairments, the Court will limit its discussion to the evidence relating to those impairments.

Plaintiff first sought treatment for his mental impairments from Dr. Sivanata Paul. (Tr. 233-241).  The records, spanning from June 8, 2007 to August 31, 2007 (Tr. 233-241), indicate Plaintiff suffered from panic disorder with agoraphobia (Tr. 236) and

anxiety.  (Tr. 236, 238).  Dr. Paul prescribed appropriate medications and noted that Plaintiff's anxiety appeared to lessen.  (Tr. 236-241).

On October 16, 2009, Plaintiff underwent a consultative examination by Kristjan Olafsson, Ph.D., at the request of the SSA.  (Tr. 287).  Dr. Olafsson described Plaintiff's demeanor as cooperative and observed that Plaintiff had an overall adequate appearance.  (Tr. 288).  He also noted Plaintiff had an anxious mood (Tr. 288) and that his attention was adequate; however, Plaintiff's concentration seemed mildly impaired. (Tr. 289).  Before rendering his opinion about Plaintiff, Dr. Olafsson mentioned that Plaintiff bathed, groomed, and dressed himself and that he was capable of performing household chores such as cooking, general cleaning, and managing finances.  (Tr. 289). Finally, Dr. Olafsson opined:

> Vocationally, the claimant appears to be capable of understanding and following simple instructions and directions. He appears to be capable of performing simple and most complex tasks independently. He appears to be capable of maintaining adequate attention for tasks. His ability to concentrate for tasks appears mildly impaired. His ability to attend to a routine and maintain a schedule may be hindered by social anxiety. He appears capable of learning new tasks. He appears to retain a good capability for making appropriate decisions. He may have difficulty relating to and interacting appropriately with others due to anxiety. His ability to deal with routine daily stress may be impacted by anxiety.

(Tr. 289-290).

Plaintiff returned to the care of Dr. Paul in May of 2010 and Dr. Paul noted that Plaintiff was irritable and anxious.  (Tr. 348).  Dr. Paul also noted that Plaintiff complained of worsening anxiety and an inability to focus.  (Tr. 348).  Finally, Dr. Paul mentioned Plaintiff had treated with Xanax and Zoloft, both of which appeared to help

with Plaintiff's symptoms.  (Tr. 349).  Dr. Paul continued treating Plaintiff throughout the summer and on July 2, 2010, noted Plaintiff was still anxious and was recently becoming nervous.  (Tr. 344).  On August 27, 2010, Dr. Paul again saw Plaintiff, who mentioned that he was still anxious.  (Tr. 342).  Finally, Dr. Paul saw Plaintiff on November 5, 2010 and February 4, 2011 and observed that Plaintiff was doing well, but ordered Plaintiff to continue with his current medications.  (Tr. 372-375).

Plaintiff's medical records were also examined by two state agency physicians: Dr. Alan Harris, Ph.D. on November 12, 2009 (Tr. 307) and Dr. Michael Zelenka, Ph.D. on April 12, 2010.  (Tr. 334).  Both doctors performed a Mental Residual Functional Capacity Assessment and completed agency Form SSA-4734-F4-SUP.  (Tr. 305-07, 332-34).  The state agency physicians collectively found Plaintiff to be moderately limited in eight of the twenty categories listed in Section I of the form.  (Tr. 305-07, 332-34).  Both doctors then completed Section III of the form, titled Functional Capacity Assessment.  (Tr. 307, 334).  Dr. Harris opined Plaintiff had social anxiety and was unable to work with large crowds.  (Tr. 307).  Dr. Harris further opined that working with the public might trigger a panic attack in Plaintiff.  (Tr. 307).  Finally Dr. Harris noted Plaintiff was able to shop and attend his doctor appointments and that he should be able to adapt, set goals, and plan.  (Tr. 307).  Similarly, Dr. Zelenka opined Plaintiff had social anxiety, even around most family members and that Plaintiff was "socially avoidant."  (Tr. 334).  Dr. Zelenka went on to note that Plaintiff was capable of shopping, household chores, and managing money, and opined that, with the proper allowances, Plaintiff was capable of following simple instructions and to minimally relate to others in a workplace setting.  (Tr. 334).

-4-

## C.  Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 416.905.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404 Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 416.920(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 416.920(a)(4)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287 n.5 (1987).

In this case, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 14, 2009, the application date.  (Tr. 14).  At step two, the ALJ found Plaintiff suffered from the following severe impairments:  degenerative disc disease, obesity, hypertension, and anxiety disorder.  (Tr. 14).   At step three, the ALJ determined

Plaintiff did not have an impairment or combination of impairments that met or equaled any listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14).  The ALJ further found Plaintiff had the residual functional capacity ("RFC") to perform light work[2] with "limited to no contact with the general public; limited to no contact with co-workers who can be in the general area but require no interaction; and occasional contact with supervisors."  (Tr. 16).  In reaching this conclusion, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his alleged symptoms were not credible to the extent they were inconsistent with the RFC assessment.  (Tr. 17).

At step four, the ALJ determined Plaintiff could not perform any of his past relevant work.  (Tr. 21).  Accordingly, the ALJ proceeded to step five where, relying on the testimony of the vocational expert, he determined Plaintiff could perform other jobs existing in significant numbers in the national economy and was therefore, not disabled. (Tr. 22).

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420 (1971).  The Commissioner's findings of

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than

merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672

F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

    Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against

the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir.

1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must

view the evidence as a whole, taking into account evidence favorable as well as

unfavorable to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979

F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire

record to determine reasonableness of factual findings).

    The district court will reverse a Commissioner's decision on plenary review,

however, if the decision applies incorrect law or if the decision fails to provide the

district court with sufficient reasoning to determine the Commissioner properly applied

the law.  Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir.

1994).

    **B.    Issues on Appeal**

    Plaintiff argues two issues on appeal.  First, Plaintiff contends the ALJ improperly

articulated the weight given to the medical opinion of Dr. Olafsson, an examining

doctor.  (Doc. 16 at 5-11).  Second, Plaintiff alleges the ALJ failed to account for the opinions of the state agency physicians in the RFC.  (Doc. 16 at 11-14).

### 1. Whether the ALJ properly articulated the weight given to Dr. Olafsson's opinion and the reasons therefore.

Plaintiff alleges the ALJ erred by failing to state, with the requisite particularity, why certain medical opinions of Dr. Olafsson were not incorporated into the RFC finding.  (Doc. 16 at 5-11).  Specifically, Plaintiff argues that the ALJ failed to account for two opinions of Dr. Olafsson: (1) Plaintiff's "ability to attend a routine and maintain a schedule may be hindered by social anxiety" and (2) Plaintiffs "ability to deal with daily stress may be impacted by anxiety."  (Doc. 16 at 10).  The Commissioner responds that the ALJ's RFC finding is consistent with Dr. Olafsson's opinion, and any inconsistency between them was "thoroughly discussed." (Doc. 17 at 6-7).

When determining whether a social security claimant is disabled, the ALJ is required to consider all medical opinions as well as any other relevant evidence. Register v. Colvin, No. 5:12-cv-273, 2013 WL 1955688, at *2 (N.D. Fla. May 10, 2013); see also 20 C.F.R. § 416.927.  When considering medical opinions of the various doctors, the weight given to each opinion is determined by classifying the physician as a treating physician, examining physician, or a non-examining physician, with the most weight given to a doctor who has treated the claimant and the least weight given to a doctor who merely reviewed the claimant's medical records.  Kahle v. Comm'r of Social Sec., 845 F. Supp. 2d 1262, 1271-72 (M.D. Fla. 2012).

Additionally, the ALJ has the discretion to reject any medical opinion when there is evidence that supports a contrary conclusion.  Sharfraz v. Bowen, 825 F.2d 278, 280

(11th Cir. 1987); see also Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). However, when evaluating the medical opinions in any given case, the ALJ must state with particularity the weight given to each medical opinion and the supporting reasons. Sharfraz, 825 F.2d at 279. It is impossible for a reviewing court to determine whether the ALJ's ultimate decision is supported by substantial evidence when the ALJ fails to state the specific weight given to any medical opinion and the reasons therefore. Kahle, 845 F. Supp. 2d at 1271; see also Cowart v. Schweiker, 662 F.2d 731, 734 (11th Cir. 1981) (holding that an ALJ is required to specifically state the weight given to each item of evidence and why he reached that decision).

In the instant case, Dr. Olafsson was retained by the Commissioner to perform a "General Clinical Evaluation with Mental Status" of Plaintiff. (Tr. 286). Accordingly, Plaintiff met with and was examined by Dr. Olafsson on October 16, 2009. (Tr. 287). As a result of the examination, Dr. Olafsson prepared a report of his evaluation of Plaintiff in which he detailed his findings with regard to Plaintiff's mental limitations. (Tr. 289-290). The ALJ summarized Dr. Olafsson's opinions, including the two opinions now at issue, and then went on to summarize other medical evidence contained in the record. (Tr. 17-18). The ALJ then weighed Dr. Olafsson's opinion as follows:

> These findings are based on a comprehensive evaluation and are relatively consistent with the record as a whole. Accordingly, I give some weight to this opinion.

(Tr. 20).

The ALJ incorporated most of Dr. Olafsson's opinions into his decision. However, as Plaintiff notes, the ALJ did not include in the RFC, Dr. Olafsson's findings that Plaintiff would be limited in his ability to attend to a routine and maintain a schedule

and deal with routine daily stress.  While, it is in the purview of the ALJ to weigh and reject medical opinion evidence based on the record as a whole, when weighing medical opinion evidence, the ALJ must state the reasons for her decision.  Sharfraz, 825 F.2d at 279-80.

The Commissioner argues the ALJ's conclusion that Dr. Olafsson's opinions were "relatively" consistent with the record and decision to assign it "some" weight was sufficient.  The undersigned does not agree.  The ALJ's decision is devoid of any "specific and well-articulated" reasons for assigning Dr. Olafsson's opinion only "some" weight and there is no explanation regarding why the ALJ decided to exclude certain opinions from the RFC.  Kahle, 845 F. Supp 2d at 1272 (quoting Monte v. Astrue, No. 5:08-cv-101, 2009 WL 210720, at *6 (M.D. Fla. Jan. 28, 2009)).

In Kahle, the ALJ rejected portions of an examining doctor's opinion, claiming it was inconsistent with the evidence of record.  845 F. Supp 2d at 1272.  The court determined the ALJ failed to articulate how the opinion was inconsistent with specific medical records or particular statements regarding the claimants daily living and therefore, found reversal was required.  Id.  Likewise, in the instant case, the ALJ made a similar conclusory statement describing Dr. Olafsson's opinion as relatively consistent with the record.  (Tr. 20).  Although the ALJ deemed the opinion consistent enough to give it some weight, a reviewing court is unable to decipher if the ALJ's decision is supported by substantial evidence without knowing what parts of Dr. Olafsson's opinion were deemed inconsistent with the record and the corresponding evidence.  See id.; Poplardo v. Astrue, No. 3:06-cv-1101, 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008) (holding that reviewing court unable to determine whether the ALJ's  findings were

supported by substantial evidence where the ALJ failed to substantiate its decision with specific evidence); Paltan v. Comm'r of Social Secuirty, No. 6:07-cv-932, 2008 WL 1848342, at *5 (M.D. Fla. April 22, 2008) (finding the ALJ's failure to explain how a doctor's opinion was inconsistent with the medical evidence rendered review impossible).

Further, the Commissioner cites the ALJ's discussion of the evidence in an effort to support the ALJ's decision to not adopt Dr. Olafsson's assessment that Plaintiff was limited in his ability to attend to a routine and maintain a schedule and deal with routine daily stress. (Doc. 17 at 8). However, as courts have repeatedly observed, the decision of an ALJ cannot be affirmed simply because there is some rationale that may support the ultimate decision. Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam); see also Winschel v. Comm'r of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (explaining that, where an ALJ fails to particularly state the reasons for its decision, a reviewing court cannot affirm simply because some rationale might support the ALJ's decision).

Accordingly, the Court will remand this case and direct the ALJ to fully explain the weight given to Dr. Olafsson's opinions, particularly stating which portions of said opinion are inconsistent with the record and the evidence supporting such a conclusion.

> **2.    Whether the ALJ erred by failing to include opinions of state agency physicians in the RFC.**

Next, Plaintiff contends the ALJ erred by failing to adopt certain medical opinions of state agency physicians in her RFC finding. (Doc. 16 at 11-14). In particular, Plaintiff argues the ALJ stated the state agency doctors' opinions were consistent with the

record as a whole and were adopted into the RFC.  (Tr. 20).  Despite this claim, Plaintiff

argues the ALJ erred by failing to include numerous limitations included in the state

agency doctors' opinions.  Specifically, the doctors checked boxes indicating they found

Plaintiff was moderately limited in his ability to: (1) perform activities within a schedule,

(2) maintain regular attendance, (3) be punctual within customary tolerances, (4)

complete a normal workday and workweek without interruptions from psychologically

based symptoms, (5) perform at a consistent pace without an unreasonable number

and length of rest periods, and (6) ask simple questions or request assistance.  (Doc.

16 at 12).  The Commissioner responds that these findings by the state agency

physicians are nothing more than worksheets designed to aid state agency physicians

in their evaluation.  (Doc. 17 at 11-12).

        As an initial point, the Court observes that Defendant is correct in that the

limitations listed by Plaintiff are found on Section I of the Mental Residual Functional

Capacity Assessments form (or Form SSA-4734-F4-SUP), completed by two state

agency physicians, Drs. Harris and Zelenka.  The Social Security Administration's

Policy and Operations Manual ("POMS") § DI 24510.060 governs this form.  POMS § DI

24510.060(B)(2) describes Section I of this form as designed to record the physician's

evaluation of the evidence, their conclusions regarding the presence and degree of

specific functional limitations, and the adequacy of the record. Furthermore, POMS § DI

24510.060(B)(2)(a) states that "Section I is merely an aid ... and does not constitute the

RFC assessment."  Accordingly, under POMS § DI 24510.060(B)(2)(a), the limitations

noted by Drs. Harris and Zelenka in Section I do not constitute their mental RFC

assessment, but rather simply reflect their thoughts on the presence of any mental

limitations and the adequacy of the corresponding evidence.  Rather, Section III is where the physicians make their actual mental RFC assessments.  See POMS § DI 24510.060(B)(4); Land v. Comm'r of Social Sec., 494 F.App'x 47, 49 (11th Cir. 2012) (per curiam) (stating that checking the box does not indicate the degree and extent of the limitation, but rather is an aid before the doctor engages in her actual required RFC); Jones v. Comm'r of Social Sec., 478 F.App'x 610, 612 (11th Cir. 2012) (same).

Consistent with these requirements, in Section III of the Mental Residual Functional Capacity Assessments form, Dr. Harris stated Plaintiff:

> [could] not work with [large] crowds and [] working with the public [would] likely trigger panic.  Due to his anx[iety], w[ou]ld be hesitant to ask ques[tions].  No h[istory] of interp[ersonal] conflict at work.  ...  Sh[ou]ld be able to adapt, set goals, and plan.

(Tr. 307).  Similarly, Dr. Zelenka stated: "with allowances for his social anxiety, [Plaintiff] retains adequate mental ability to carry out simple instructions and to relate minimally adequately to others in a routine work setting."  (Tr. 334).  These opinions are consistent with the ALJ's RFC finding that Plaintiff was limited to "no contact with the general public; limited to no contact with co-workers who can be in the general area but require no interaction; and occasional contact with supervisors."  (Tr. 16).  Accordingly, the undersigned finds the ALJ did not err in failing to include in the RFC the limitations noted in Section I of the forms completed by Drs. Harris and Zelenka.

## IV.    CONCLUSION

For the foregoing reasons, the ALJ's decision is hereby **REVERSED and REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall (1) weigh all the evidence in the case, including the opinion of Dr. Olafsson and

particularly state the weight given to said opinion and the specific reasons therefore; and (2) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion, and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration.  This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

**DONE AND ORDERED** at Jacksonville, Florida, this ___3rd___ day of January, 2014.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

-14-